## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

JESSICA PENDERGAST,

               Plaintiff,

    v.

KILOLO KIZAKAZI,

               Defendant.

CIVIL ACTION NO. 3:22-CV-00627

(MEHALCHICK, M.J.)

### MEMORANDUM

Plaintiff Jessica Pendergast ("Pendergast") brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Society Security Act. (Doc. 1). On May 31, 2022, the parties consented to proceed before the undersigned United States Magistrate Judge pursuant to Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). (Doc. 11). For the following reasons, the Commissioner's decision will be **VACATED and REMANDED**.

I.    **BACKGROUND AND PROCEDURAL HISTORY**

On April 9, 2020, Pendergast protectively filed applications for Title II disability insurance benefits and Title XVI supplemental security income, claiming disability beginning March 9, 2020. (Doc. 13-5, at 2). The Social Security Administration ("SSA") initially denied both applications on December 14, 2020, and upon reconsideration on March 3, 2021. (Doc. 13-4, at 17, 28). On March 11, 2021, Pendergast filed a request for a hearing, which Administrative Law Judge ("ALJ") Edward L. Brady held on July 14, 2021. (Doc. 13-2, at 21). In a written opinion dated August 30, 2021, the ALJ determined that Pendergast "has

not been under a disability, as defined in the Social Security Act from March 9, 2020, through the date of this decision." (Doc. 13-2, at 35). On March 18, 2022, the Appeals Council denied Pendergast's request for review. (Doc. 13-2, at 2).

On April 29, 2022, Pendergast filed the instant complaint. (Doc. 1). The Commissioner responded on July 14, 2022, providing an answer and the requisite transcripts from Pendergast's disability proceedings. (Doc. 12; Doc. 13). The parties then filed their respective briefs, with Pendergast raising two bases for reversal or remand. (Doc. 14; Doc. 17; Doc. 18).

II.  **STANDARDS OF REVIEW**

In order to receive benefits under Title II or Title XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To satisfy this requirement, a claimant must have a severe physical or mental impairment[1] that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a). Additionally, to be eligible to receive benefits under Title II of the Social Security Act, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131.

---

[1] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

A. ADMINISTRATIVE REVIEW

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment;[2] (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC"); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 20 C.F.R. § 404.1512(a); 20 C.F.R. § 416.912(a). Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f) ; 20 C.F.R. § 416.912(f).

B. JUDICIAL REVIEW

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court's review is limited to determining whether the findings of the final

---

[2] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1 (effective June 12, 2015, through July 19, 2015).

decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before the Court, therefore, is not whether Pendergast is disabled, but whether the Commissioner's finding that Pendergast is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The

- 4 -

[Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues decided by the Commissioner.").

III.   **THE ALJ'S DECISION**

In his written decision, the ALJ determined that Pendergast "has not been under a disability, as defined in the Social Security Act, from March 9, 2020, through the date of this decision." (Doc. 13-2, at 35). The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920(a). At the outset, the ALJ determined that Pendergast meets the insured status requirements of the Social Security Act through September 30, 2025. (Doc. 13-2, at 24).

A.   **STEP ONE**

At step one of the five-step analysis, the ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R § 404.1520(a)(4)(i); 20 C.F.R. § 416.920(a)(4)(i). If a claimant is engaging in SGA, the Regulations deem them not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b); 20 C.F.R. § 416.920(b). SGA is defined as work activity—requiring significant physical or mental activity—resulting in pay or profit. 20 C.F.R. § 404.1572; 20 C.F.R. § 416.972. In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574; 20 C.F.R. § 416.974. Here, the ALJ determined that Pendergast "has not engaged in substantial gainful activity since March 9, 2020, the alleged onset date." (Doc. 13-2, at 24). Thus, the ALJ's analysis proceeded to step two.

- 5 -

B.   STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 416.920(a)(4)(ii). If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits [their] physical or mental ability to do basic work activities, [the ALJ] will find that [the claimant] does not have a severe impairment and [is], therefore not disabled." 20 C.F.R. § 1520(c); 20 C.F.R. § 416.920(c). If a claimant establishes a severe impairment or combination of impairments, the ALJ analysis continues to the third step. Here, the ALJ concluded that Pendergast had the following medically determinable severe impairments: "morbid obesity, chronic obstructive pulmonary disease (COPD), osteoarthritis of the hips, sciatica, and bilateral lower extremity edema." (Doc. 13-2, at 24). In addition, the ALJ determined that Pendergast had the following medically determinable non-severe impairments: obstructive sleep apnea, plantar fasciitis, a depressive disorder, gastroesophageal reflux disease, and a history of ovarian cyst. (Doc. 13-2, at 24).

C.   STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. §§ 404.1520(a)(4)(iii); 404.1525; 404.1526; 20 C.F.R. §§ 416.920(a)(4)(iii); 416.925; 416.926. The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairments meet these listings, then the claimant is considered disabled. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 416.920(d). Here, the ALJ

determined that none of Pendergast's impairments, considered individually or in combination, meet or equal the severity of a listed impairment. (Doc. 13-2, at 26). Specifically, the ALJ considered Listings 1.15 (Disorders of the skeletal spine resulting in compromise of a nerve root(s)), 1.16 (Lumbar spinal stenosis resulting in compromise of the cauda equina), 1.18 (Abnormality of a major joint(s) in any extremity), 3.02 (Chronic Respiratory Disorders) and Social Security Ruling 19-2p. (Doc. 13-2, at 27-29).

D. RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ determines the claimant's residual functional capacity ("RFC"), crafted upon consideration of the evidence presented. Here, Pendergast alleged that her impairments caused the following symptoms: edema, swelling, and pain in her hands, legs, knees, and feet, hand and toe numbness, arthritis of her lower body, sciatica, planter fasciitis, foot pain, and a major depressive disorder. (Doc. 13-2, at 31). After examining her statements and the medical evidence, the ALJ found while that Pendergast's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Pendergast's statements about the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 13-2, at 31). The ALJ went on to detail Pendergast's medical records and treatment history. (Doc. 13-2, at 31).

Considering all evidence in the record, the ALJ determined that Pendergast has the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)," subject to the following non-exertional limitations:

> [Pendergast] could stand for up to 2 hours in an 8-hour workday; could occasionally balance and stoop, but must never kneel, crouch, and crawl; could

occasionally climb ramps and stairs, but never ladders, ropes, and scaffolds; and must avoid outdoor work, i.e. work with continuous exposure to extreme temperatures and humidity.

(Doc. 13-2, at 30).

E.  STEP FOUR

Having assessed a claimant's RFC, at step four the ALJ must determine whether the claimant has the RFC to perform the requirements of their past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 416.920(a)(4)(iv). A finding that the claimant can still perform past relevant work requires a determination that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 416.920(a)(4)(iv). Past relevant work is defined as work the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b); 20 C.F.R. § 416.960(b). If the claimant cannot perform past relevant work or has no past relevant work, then the analysis proceeds to the fifth step. 20 C.F.R. § 404.1565; 20 C.F.R. § 416.965.

Here, the ALJ determined Pendergast is unable to perform any past relevant work. (Doc. 13-2, at 33). The ALJ noted past relevant work of home health aide, flagger, hotel cleaner, assistant manager, and materials handler, but the exertional requirements of each exceeded Pendergast's RFC. (Doc. 13-2, at 33-34). Thus, the ALJ proceeded to step five of the sequential analysis.

F.  STEP FIVE

At step five of the sequential analysis process, an ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 416.920(a)(4)(v). These factors are not considered when evaluating a claimant's ability to perform past relevant work. 20 C.F.R. §

- 8 -

404.1560(b)(3); 20 C.F.R. § 416.960(b)(3). If a claimant has the ability to make an adjustment to other work, they will not be considered disabled. 20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 416.920(a)(4)(v). Here, the ALJ made vocational determinations that Pendergast was 44 years old on the date last insured, defined as a younger individual age 18-49 by the Regulations. 20 C.F.R. § 404.1563; 20 C.F.R. § 416.963. (Doc. 13-2, at 34). The ALJ also noted that Pendergast "has a limited education" as considered in 20 C.F.R. § 404.1564; 20 C.F.R. § 416.964. (Doc. 13-2, at 34). The ALJ determined that upon consideration of these factors, Pendergast's RFC, and the testimony of a vocational expert, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." 20 C.F.R. §§ 404.1569; 404.1569(a); 20 C.F.R. §§ 416.969; 416.969(a). (Doc. 13-2, at 34). The ALJ specifically identified occupations of semiconductor bonder, final assembler, circuit layout taper, dowel small wood part inspector, and stuffer, which are occupations with open positions ranging from 6,000 to 15,000 nationally. (Doc. 13-2, at 35). As a result of this analysis, the ALJ determined that Pendergast was not disabled and denied her application for benefits. (Doc. 13-2, at 35).

IV.  **DISCUSSION**

Pendergast advances two arguments on appeal. (Doc. 14, at 1). First, Pendergast argues that the ALJ failed to discuss the opinion of an acceptable medical source imposing the need for Pendergast to elevate her legs. (Doc. 14, at 3). Second, Pendergast asserts that the ALJ and Appeals Council Judges had no legal authority to adjudicate this case because they were not properly appointed. (Doc. 14, at 3-7). In response, the Commissioner maintains that substantial evidence supports the ALJ's unfavorable decision and Ms. Berryhill was

validly serving as Acting Commissioner when she ratified and approved the appointments of SSA ALJs. (Doc. 17, at 16-24).

    A.    <u>Substantial evidence does not support the ALJ's evaluation of Pendergast's impairment of swelling in her legs.</u>

Pendergast avers that the ALJ failed to discuss the opinion of an acceptable medical source imposing the need for Pendergast to elevate her legs. (Doc. 14, at 3). Specifically, Pendergast argues that the ALJ failed to discuss the opinion of Brittancy Morris, PA-C ("PA Morris"), who opined that Pendergast needs to elevate her legs during the day. (Doc. 14, at 6). In opposition, the Commissioner argues substantial evidence supports the ALJ's decision because the ALJ reasonably considered the medical evidence regarding Pendergast's leg swelling and the response to various treatment measures. (Doc. 17, at 16-17).

Assessing a claimant's RFC falls within the purview of the ALJ. 20 C.F.R. §§ 404.1546(c), 416.946(c); SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). "[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). Specifically, one's RFC reflects the most that an individual can still do, despite his or her limitations, and is used at steps four and five to evaluate the claimant's case. 20 C.F.R. §§ 404.1520, 404.1545, 416.920, 416.945; SSR 96-8P, 1996 WL 374184 at *2. In crafting the RFC, the ALJ must consider all the evidence of record, including medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's RFC findings, however, must be supported by the medical evidence. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

"[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018). Applying this standard to the present record, the Court finds substantial evidence does not support the ALJ's RFC determination as it pertains to the opinion of PA Morris.

In *Cotter v. Harris*, the Circuit Court of Appeals clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." 642 F.2d 700, 704, 706-707 (3d Cir. 1981). However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See, e.g., Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "There is no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).

In making the RFC determination, "the ALJ must consider all evidence before him" and "evaluate every medical opinion . . . receive[d]." *Burnett*, 220 F.3d at 121 (citations omitted); 20 C.F.R. § 404.1513(a)(2); *see also Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) ("The Secretary must 'explicitly' weigh all relevant, probative and available evidence. . . . The Secretary may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects."). The Social Security Regulations define "medical opinions" as "statements from

physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including . . . symptoms, diagnosis, and prognosis, what [the claimant] can still do despite [his or her] impairment(s), and . . . physical or mental restrictions." 20 C.F.R. §404.1527(a)(2). Social Security Ruling ("SSR") 96-5p further clarifies that "opinions from any medical source on issues reserved to the Commissioner must never be ignored," and specifically states that the ALJ's "decision must explain the consideration given to the treating source's opinion(s)." 2 SSR 96-5p, 1996 WL 374183, at *3, *6 (July 2, 1996).

As this matter involves a claim filed after March 27, 2017, the new regulatory framework governing the evaluation of medical opinions applies to the ALJ's evaluation of the medical opinions in the record. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132-01 (Mar. 27, 2017)); *see also* 82 Fed. Reg. 15263 (March 27, 2017); 82 Fed. Reg. 16869 (corrective notice) (explaining that SSR 96-2p and 96- 5p do not apply to newly filed or pending claims after March 27, 2017). Under the new regulations, rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. §§ 404,1520c(b), 416.920c(b). The Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§

- 12 -

404.1520c(c), 416.920c(c). The most important of these factors is the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). To facilitate judicial review, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests" and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Cotter, 642 F.2d at 704, 706-707. An ALJ need not undertake an exhaustive discussion of all the evidence or "use particular language or adhere to a particular format in conducting his analysis." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004); see Hur, 94 F. App'x at 133 ("There is no requirement that the ALJ discuss in his opinion every tidbit of evidence included in the record."). However, an ALJ must ensure "sufficient development of the record and explanation of findings to permit meaningful review." Jones, 364 F.3d at 505; see, e.g., Rivera v. Comm'r of Soc. Sec., 164 F. App'x 260, 262 (3d Cir. 2006) ("The only requirement is that, reading the ALJ's decision as a whole, there must be sufficient development of the record and explanation of findings.").

In this case, it appears that the ALJ's decision did not fully comply with these legal directives. Importantly, the ALJ did not address P.A. Morris's opinion that Pendergast must elevate her legs, a postural limitation that the vocational expert described as a complete barrier

- 13 -

to competitive labor. (Doc. 13-2, at 65). At step two of the sequential evaluation, the ALJ

found that Pendergast's bilateral lower extremity edema is a medically severe impairment.

(Doc. 13-2, at 24). Here, the ALJ considered Pendergast's medically determinable limitations

of bilateral leg swelling in the RFC determination, explaining:

> As for [Pendergast]'s statements about the intensity, persistence, and limiting
> effects of her symptoms, they are inconsistent because the severity of the
> limitation alleged by [Pendergast] is not fully corroborated by the medical
> records throughout the review period. The period of review commences on the
> March 9, 2020, alleged onset date. During the review period, the medical
> records show that [Pendergast] was diagnosed with morbid obesity, chronic
> obstructive pulmonary disease (COPD), osteoarthritis of the hips, sciatica, and
> bilateral lower extremity edema. In late February of 2020, examination findings
> revealed no abnormalities (Exhibit 1F, page 11). On March 20, 2020,
> [Pendergast] was examined by Geisinger providers and lower extremity was
> detected. To address this edema, [Pendergast] was provided Lasix (Exhibit 3F,
> page 4). Examination findings in May of 2020 showed normal findings, her
> lower extremity strength was grossly intact, she displayed no edema of the
> lower limbs (the Lasix appeared to have remedied this condition, at least
> temporarily), and her lungs were clear. Neurological examination findings
> were also normal (Exhibit 2F, page 6). The 5'3½" tall claimant weighed 238
> pounds, a height/weight ratio consistent with obesity (her body mass index
> (BMI) was measured at 41.49 kg/m2) (Exhibit 3F, page 7). Despite being
> referred for physical therapy, [Pendergast] did not participate in the same
> (Exhibit 4F, page 14). Echocardiogram testing showed that [Pendergast]
> experienced mild to moderate mitral valve regurgitation. Otherwise, cardiac
> testing results were normal (Exhibit 5F, pages 27 to 32). On July 9, 2020,
> [Pendergast] showed no abnormal lower extremity findings, a normal gait, and
> clear lungs (Exhibit 5F, page 17). At the end of July 2020, [Pendergast]'s weight
> increased to 245 pounds (Exhibit 5F, page 9). Despite intermittent lower
> extremity swelling, noted throughout the end of 2020 and again in April of
> 2021, [Pendergast] incurred no acute cardiopulmonary disease and clear lungs
> (Exhibit 7F, pages 2 and 12). 284 pounds was [Pendergast]'s increased
> measured and recorded weight, in June of 2021. However, [Pendergast]'s lungs
> were clear, her gait/musculoskeletal findings were normal, and her pitting
> edema, previously noted at 3+, improved to 2+. Neurologically, [Pendergast]
> was normal (Exhibits 8F, page 8 and 9F, page 5). [Pendergast] underwent stress
> testing, the results of which showed dyspnea; yet, [Pendergast] continued to
> smoke cigarettes. [Pendergast]t's primary care providers noted [Pendergast]'s
> ongoing consumption of salty foods and suspected decondition as a source of
> [Pendergast]'s issues (Exhibit 9F). Overall, a review of [Pendergast]'s

allegations shows that her main problems were shortness of breath with lower extremity pain and edema. Even though [Pendergast]'s diuretic medication was not fully effective, she did not experience heart failure. In sum, when considering [Pendergast]'s more mild to moderate examination findings and objective testing results, in conjunction with her ongoing ability to complete a full spate of life's daily activities (upon which elaboration will occur, below), the evidence supports a finding that [Pendergast] is able to complete a range of light exertional work, with a reduction in her ability to stand.

In addition to the above medical evidence of record, the undersigned considered the non-medical evidence including [Pendergast]'s testimony and the function report in terms of [Pendergast]'s activities of daily living. Specifically, [Pendergast] is able to address her personal care needs. Moreover, she is able to drive and to shop in grocery stores either alone or with the accompaniment of others. During the day, she cleans her home, takes care of her animals (a cat and a dog), and prepares meals (simple and complex). Moreover, [Pendergast] launders the clothing and washes the dishes. She retains sufficient cognitive ability to address her financial affairs, including paying bills, counting change, and maintaining checking/savings accounts. In her function report, she reported no issues with memory or concentration. Coping with stress and adapting to change is of no issue for [Pendergast]. She reported no problems with understanding and following instructions. [Pendergast] further indicated that she is able to follow both written and oral directives, very well. [Pendergast] requires no prompting/reminders to address her personal care needs, to take her medication, to complete household chores, or to attend appointments (Exhibit 7E and Hearing testimony). While the undersigned acknowledges that [Pendergast] has some limitations performing these activities, and while none of these activities is dispositive, taken together and considered in conjunction with the above medical evidence of record, they suggest that [Pendergast] could perform work within the above parameters on a sustained and continuous basis.

[Pendergast]'s main issues regarding her bilateral leg swelling, while severe do not support limitations inconsistent with the above residual functional capacity. In so finding, while [Pendergast] is noted to suffer from swelling, there is no evidence to support an inability to perform work with limited standing and walking as outlined above

(Doc. 13-2, at 31-32).

However, with respect to the medical limitation of leg elevation, the Court notes that there was testimony and objective medical evidence in the record that called for some

consideration of this particular impairment. PA Morris opined that Pendergast elevates her legs at home. (Doc. 13-7, at 207, 277). This supports Pendergast's allegation that she must elevate her legs to prevent swelling and pain in her legs from the knees down. (Doc. 13-2, at 54). In addition, Pendergast testified that she elevates her legs as often as she can to reduce swelling. (Doc. 13-2, at 53). Counsel for Pendergast specifically posed a hypothetical question to the vocational expert of whether a claimant that needs to elevate her legs and feet above heart level for periods of a half hour, every two hours during a work shift would be able to engage in gainful work. (Doc. 13-2, at 54). In response, the vocational expert stated that would eliminate all competitive labor. (Doc. 13-2, at 65).

Despite this evidence in the record, the ALJ's decision contains no reference to the limitation of leg elevation. The Court finds that the ALJ's failure to include a discussion about this limitation was error and that such error calls for a remand. *See Seibert v. Saul*, No. 1:18-CV-10, 2019 WL 4439653, at *7 (M.D. Pa. Aug. 28, 2019), *report and recommendation adopted*, No. 1:18-CV-10, 2019 WL 4420578 (M.D. Pa. Sept. 16, 2019) (reversing and remanding ALJ's unfavorable decision where ALJ failed to address or acknowledge leg elevation limitation); *Amy P. v. Kijakazi*, No. 2:20-CV-12082, 2022 WL 3586393, at *9 (D.N.J. Aug. 22, 2022) (reversing and remanding ALJ's unfavorable decision where alleged lack of objective evidence did not support rejection of the limitation of elevating the claimant's feet). Although the ALJ recognized Pendergast's diagnosis of bilateral leg swelling, the ALJ failed to reference PA Morris's opinion that Pendergast elevate her legs. (Doc. 13-2, at 31-32; Doc. 13-7, at 207, 277).

In *Seibert*, the Court found that the ALJ's RFC determination "did not account for the well-documented need for [the claimant] to elevate his legs above the level of his heart for much of the work day." 2019 WL 4439653, at *3. The Court explained:

> [I]t has been held that when the residual functional capacity assessment formulated by an ALJ fails to take into account a treating physician's opinion that the plaintiff is required to elevate his legs, a remand is necessary to further examine that treating source opinion and incorporate its limitations into an RFC assessment, if necessary. *See Dillon v. Colvin*, 210 F. Supp. 3d 1198, 1212 (D.S.D. 2016). Similarly, in the past, courts have often acknowledged the need for an ALJ to explicitly address any medical requirements that a plaintiff elevates his legs at work for prolonged periods. The need for this type of analysis by an ALJ was recognized by the court in *Melendez v. Astrue*, 630 F. Supp. 2d 308, 315 (S.D.N.Y. 2009), where the district court found that an ALJ's failure to address the claimant's need to elevate his legs throughout the day required a remand, stating that:
>
>> [T]he ALJ ought to have acknowledged the matter and included it in his weighing of the evidence. The ALJ has a legal duty to adequately develop the record, *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996), and consider it in its entirety, 20 C.F.R. 404.1520(a)(3). It is grounds for remand "when it appears that the ALJ has failed to consider relevant and probative evidence which is available to him." *Lopez v. Sec'y of Dept. of Health and Human Servs.*, 728 F.2d 148, 150–51 (2d Cir. 1984). The ALJ did not ask [plaintiff] any questions about his putative need to elevate his legs. He did not discuss it in his ruling either. While factual determinations are within the ALJ's competence, these determinations must be manifestly informed by the evidence. *Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 290 (E.D.N.Y. 2004). By neglecting to mention this part of the record which may have influenced his conclusion, the ALJ committed legal error. The issue should be remanded for consideration of this omitted evidence.
>
> *Melendez*, 630 F. Supp. 2d at 315. Simply put, it is well-settled that an inadequate discussion of the medical necessity for a disability claimant to elevate his legs for prolonged periods in order to combat edema, venous insufficiency, and neuropathy is generally regarded as a material shortcoming in analysis by an ALJ and compels a remand. *See Lawson v. Barnhart*, 218 F. Supp. 2d 967, 972 (N.D. Ill. 2002).
>
> *Seibert*, 2019 WL 4439653, at *7-8.

- 17 -

Given the relevant case law and upon consideration of the record before the ALJ, the Court finds that the ALJ's failure to analyze or address the abovementioned evidence, which the vocational expert testified would preclude work if credited by the ALJ, necessitates remand. This leaves the Court unable to make an informed decision regarding whether the ALJ's decision is supported by substantial evidence as the Court "cannot discern whether this evidence was discounted for 'no reason or for the wrong reason.'" *Seibert*, 2019 WL 4439653, at *8 (quoting *Mason*, 994 F.2d at 1066); *see Amy P.*, 2022 WL 3586393, at *9. Accordingly, the Court finds that the ALJ's failure to articulate a sufficient rational for his decision compels the vacating of the ALJ's decision and remanding of the matter for further proceedings consistent with the reasons set forth herein.

B.   THE COURT DECLINES TO ADDRESS PENDERGAST'S REMAINING ARGUMENTS.

Because the Court will vacate and remand the decision of the Commissioner for further consideration, concluding that the ALJ's RFC assessment is not supported by substantial evidence, the Court declines to address Pendergast's remaining arguments. "A remand may produce different results on these claims, making discussion of them moot." *Burns v. Colvin*, 156 F. Supp. 3d 579, 598 (M.D. Pa. Jan. 3, 2016). The Court's evaluation of Pendergast's additional contentions would be futile given that the ALJ's decision concerning Pendergast's RFC assessment may yield a different result.

V.   **REMEDY**

As a final matter, the Court addresses whether this case should be remanded to the Commissioner for further administrative proceedings or whether reversal and an award of benefits is appropriate. The Court has authority to affirm, modify or reverse the

- 18 -

Commissioner's decision "with or without remanding the case for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100–01 (1991). However, the Third Circuit has advised that benefits should only be awarded where "the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits." *Morales v. Apfel,* 225 F.3d 310, 320 (3d Cir. 2000); *see e.g. Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). Here, the appropriate measure is to remand for further consideration on the issue of whether Pendergast needs to elevate her legs during the day. Upon remand, the ALJ is instructed to consider and make specific findings as to all relevant probative medical evidence.

VI.   **CONCLUSION**

Based on the foregoing, the Commissioner's decision to deny Pendergast's application for disability benefits is **VACATED**, and the case is **REMANDED** to the Commissioner to fully develop the record, conduct a new administrative hearing, and appropriately evaluate the evidence pursuant to sentence four of 42 U.S.C. § 405(g). Further, the Clerk of Court is directed to **CLOSE** this case.

An appropriate Order follows.

Dated: September 11, 2023                         *s/ Karoline Mehalchick*
                                                  KAROLINE MEHALCHICK
                                                  **Chief United States Magistrate Judge**

- 19 -